IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RICHARD L. DAVIDSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:20cv00169 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DHO FRANKS, *et al.*, | ) | By:   Hon. Thomas T. Cullen |
| | ) |         United States District Judge |
| Defendants. | ) | |

Plaintiff Richard L. Davidson, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, alleging that he was denied due process at a disciplinary hearing and subjected to a retaliatory transfer. This matter is before the court on the defendants' motion for summary judgment. Having reviewed the record, the court will grant the defendants' motion.

## I.

On March 1, 2018, while housed at Wallens Ridge State Prison ("Wallens Ridge"), Davidson was charged with a disciplinary infraction for intentionally destroying, altering, or defacing state property. In the disciplinary offense report, the reporting officer noted that, while in Davidson's cell, he found a mattress that had been altered by "putting two mattress[es] together and the cover had been sewn back together." The charge was approved and served on Davidson the same day that the mattress was discovered. Davidson signed the disciplinary offense report acknowledging that he had been served with the charge and advised of his rights. He also indicated on the report that he requested a staff or offender advisor, he wanted to request a witness, he did not want to request any documentary evidence, he waived his right

to 24-hour preparation time prior to the hearing, and he wanted to be present at the hearing. A disciplinary hearing was scheduled for March 12, 2018.

Davidson submitted witness request forms for two staff members. Both staff members submitted witness statements. Disciplinary Hearing Officer ("DHO") Hensley—who is not a party to this action—determined the witnesses' statements were not relevant to the offense and decided not to address their statements at the disciplinary hearing.[1]

Defendant DHO Franks conducted a hearing on March 12, 2018. Davidson was present at the hearing with a staff advisor and pleaded not guilty to the charge. The reporting officer was present and testified that the mattress was found in Davidson's cell and had been altered; specifically, that two mattresses had been put into one. Davidson testified on his own behalf that the mattress was brought to him five years prior as a replacement mattress and that although it was altered, he did not alter it. He argued that in his five years of possessing the mattress and at least 20 mattress inspections, including x-rays, staff had failed to notice the double mattresses prior to the most recent inspection. DHO Franks stated that he had "trouble believing" that the mattress had been examined 20 times "without getting caught." Davidson also stated that the mattress had another cell number written on it and asked DHO Franks to examine it to see that number.[2] DHO Franks did not examine the mattress and stated that he had "no way to know where it came from," but that there was "no question" the mattress had been altered and was in Davidson's possession at the time it was discovered.

---

[1] Both witnesses stated that they had no recollection of relevant facts.

[2] Davidson argues that the other cell number was written on it in black permanent marker, but that inmates in his cell block did not have access to black markers. It is unclear whether this number would have been written by staff or an inmate, but Davidson did not make this argument at his hearing.

DHO Franks found Davidson guilty of the charge based on the testimony of the reporting officer and, at Davidson's suggestion, imposed a penalty of $110 in restitution. DHO Franks prepared a notice of restitution on March 16, 2018, and sent it to the business office, with a copy to Davidson, to have the restitution deducted from Davidson's inmate trust account. On March 21, 2018, Davidson acknowledged that he had been provided with the written decision of the DHO, which included the basis of the DHO's findings, and advised of his right to appeal the decision to the facility unity head and the Regional Director. Davidson argues that DHO Franks denied him due process by refusing to allow him to present evidence in his defense and finding him guilty "with no evidence to support the charge."

Davidson appealed the disciplinary conviction and defendant Warden Manis upheld the conviction. Davidson further appealed and defendant Regional Administrator ("RA") Marcus Elam also upheld the conviction. Davidson argues that Warden Manis and RA Elam denied him due process when they each upheld his appeals after he had pointed out that DHO Franks had denied him due process.

Davidson also claims that on March 28, 2018, defendant John Doe initiated a "retaliatory transfer" of Davidson from Wallens Ridge to River North Correctional Center ("River North"), a "mere 16 days" after his disciplinary hearing and after Davidson "announced his intention to appeal" the DHO's determination of guilty.[3]

---

[3] The court notes that Davidson is not proceeding *in forma pauperis* in this action and, therefore, was responsible for notifying the defendants of this action, under Rule 4 of the Federal Rules of Civil Procedure, himself. Davidson did not identify or accomplish service on defendant John Doe. He also did not request any discovery to aid his identification of John Doe. Instead, he acknowledged that he would not be able to serve this action upon John Doe and appears to have abandoned the claim against him. The other defendants, however, have moved for summary judgment as to this retaliatory transfer claim on the basis that Davidson failed to exhaust administrative remedies on the claim before filing this action.

In their motion for summary judgment, defendants argue that Davidson received all the process he was due at his disciplinary hearing and that he failed to exhaust available administrative remedies as to his retaliatory transfer claim.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes

the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Davidson alleges that DHO Franks denied him due process at his disciplinary hearing by refusing to allow him to present evidence in his defense and finding him guilty "with no evidence to support the charge," and that Warden Manis and RA Elam denied him due process when they each upheld his disciplinary conviction on appeal. Having reviewed the record, the court will grant defendants' motion for summary judgment as to Davidson's due process claims.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). For purposes of this opinion, the court will assume without deciding that the disciplinary proceedings at issue subjected Davidson to the loss of a protected interest, and that he was therefore constitutionally entitled to due process.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418

U.S. 539, 556 (1974). To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide the following: (1) advance written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary evidence at the disciplinary hearing; (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563–66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985).

In this case, the record reflects that Davidson received the required due process. He received notice of the charges against him 11 days before his hearing; although he requested two staff witnesses at the hearing, their testimony was deemed irrelevant;[4] he did not request to present documentary evidence;[5] and he was provided a written statement of the evidence relied on by the DHO and the reasons for the disciplinary action taken.

---

[4] Although the witnesses' statements were determined to be irrelevant prior to the hearing because neither witness had a recollection of relevant facts, DHO Franks still read the witnesses' statements into the record at the hearing. A prisoner is not entitled to introduce irrelevant matters at a disciplinary hearing. *Ansel v. Hicks*, No. 1:11cv114-RJC, 2012 U.S. Dist. LEXIS 141422, at *38-39 (W.D.N.C. Sep. 28, 2012) (citing *Wolff*, 418 U.S. at 566); *see also Jenkins v. Warden, FCI Edgefield*, No. 5:14cv03687-BHH-KDW, 2015 U.S. Dist. LEXIS 124331, at *13 (D.S.C. Apr. 24, 2015).

[5] On March 1, 2018, Davidson signed the disciplinary offense report and indicated that he did not wish to request any documentary evidence. At his hearing on March 12, 2018, he again confirmed at the outset of the hearing that he did not wish to request any documentary evidence. During his own testimony at the hearing, however, Davidson asked DHO Franks to examine the mattress, but DHO Franks declined to do so. That Davidson changed his mind during his disciplinary hearing after twice declining the opportunity to present such evidence does not show that the defendants violated his due process rights. Moreover, in requesting that DHO Franks examine the mattress, Davidson stated that the examination would show that another cell number was written on the mattress. Davidson argues that the other cell number written on the mattress would "prove" that he did not alter the mattress. However, he conceded to DHO Franks during the hearing that the mattress was his and that it was altered. Although Davidson argues that he had been given that mattress five years prior, DHO Franks stated that he found it hard to believe that during at least 20 mattress inspections, including x-

Due process in prison discipline decisions is satisfied if there is "some evidence" to show that the inmate committed the offense. *Id.* at 455. The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the DHO's decision. *Id.* at 455–56. This standard does not require an examination of the entire record, or a reweighing of the credibility of witnesses and other evidence. *Id.*; *see also Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990).

In light of the reporting officer's undisputed testimony that the mattress had been altered and that it was in Davidson's possession at the time it was discovered, the court concludes that there was at least "some evidence" to support the DHO's decision. Finding no genuine dispute of material fact, the court will grant defendants' motion for summary judgment as to Davidson's due process claims.

## IV.

The defendants argue that Davidson failed to exhaust available administrative remedies as to the retaliatory transfer claim, as required by 42 U.S.C. § 1997e(a), before filing this action. For the following reasons, the court will grant defendants' motion for summary judgment.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v.*

---

rays of the mattress, the altered mattress had not been discovered previously. Therefore, even if DHO Franks had examined the mattress to see the writing, it does not appear that it would have affected the basis of his decision and, in any event, there is still sufficient evidence to support DHO Franks's finding of guilt.

*Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter*, 534 U.S. at 524, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks, *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he second PLRA amendment made clear that exhaustion is now mandatory."). An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). But the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). Accordingly, an inmate need only exhaust "available" remedies. *See* 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d at 725.

In support of the defendants' motion for summary judgment as to this claim, Human Rights Advocate ("HRA") Ravizee provided an affidavit and Virginia Department of Corrections' ("VDOC") Offender Grievance Procedure, Operating Procedure ("OP") 866.1. OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. HRA Ravizee explained

that the grievance process provides corrections staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. The parties do not dispute that the issues raised in this action are grievable under OP 866.1.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to resolve his complaint informally. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. If a response is not given to the inmate within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance. As documentation of his attempt to resolve the issue informally, the inmate is required to attach the receipt of the informal complaint to the grievance.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days from the date the grievance is received. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days from the date it is received with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review. For those issues appealable to Level III, the Chief of Corrections Operations or Director of the VDOC conducts a review of the regular grievance. The time limit for issuing a Level I response is 30 days, 20 days for a Level II response, and 20 days for a Level III response. Expiration of the time limit (to include any authorized continuances) without issuance of a response at any stage of the process automatically qualifies the grievance for appeal.

In this case, Davidson did not submit any informal complaints, regular grievances, or emergency grievances related to his alleged retaliatory transfer. HRA Ravizee states that if Davidson had submitted at grievance at River North complaining that staff at Wallens Ridge transferred him out of retaliation, the grievance would have been forwarded to Wallens Ridge for a response and it would be in Davidson's grievance file at Wallens Ridge, but no such grievance exists. Davidson does not dispute the defendants' assertion that he failed to exhaust administrative remedies and, in fact, his complaint acknowledges that he had not filed any grievances regarding the facts of his complaint at the time he filed it. Davidson does not allege that he was in any way prevented from filing an informal complaint and/or grievance. Finding no genuine dispute of material fact, the court concludes the defendants are entitled to

summary judgment as a matter of law because Davidson failed to exhaust his available administrative remedies.

## V.

For the reasons stated, the court will grant defendants' motion for summary judgment.

**ENTERED** this 24th day of March, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE